# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| MARY J. WORTMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-10-1031-F |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner, Social Security | ) | |
| Administration, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Mary J. Wortman ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405 (g) seeking judicial review of Defendant Commissioner's final decision denying Plaintiff's application for disability insurance benefits under the Social Security Act. This matter has been referred to the undersigned Magistrate Judge for proceedings consistent with 28 U.S.C. § 636(b)(1)(B). Upon review of the pleadings, the record ("Tr.") and the parties' briefs, the undersigned recommends that the Commissioner's decision be affirmed.

## Administrative Proceedings

Plaintiff initiated these proceedings by protectively filing her application seeking disability insurance benefits in July, 2007 [Tr. 111- 113 and 126]. She alleged that arthritis in her neck, hypertension, depression, diverticulitis, carpal tunnel syndrome, memory problems, stress, and thyroid difficulties resulted in pain, job stress, the inability to sit in front of the computer all day, and the inability to type because of her carpal tunnel syndrome, all

of which became disabling as of February 28, 2007 [Tr. 155]. Plaintiff's claims were denied and, at her request [Tr. 60 - 61], an Administrative Law Judge ("ALJ") conducted a July, 2009 hearing where Plaintiff, who was represented by counsel, and a vocational expert testified [Tr. 24- 40]. In his September, 2009 decision, the ALJ found that while Plaintiff was unable to perform her past relevant work, she retained the capacity to perform other available work and, accordingly, was not disabled within the meaning of the Social Security Act [Tr. 15-23]. The Appeals Council of the Social Security Administration declined Plaintiff's request for review [Tr. 1 - 5], and Plaintiff subsequently sought review of the Commissioner's final decision in this court.

**<u>Standard of Review</u>**

This court is limited in its review of the Commissioner's final decision to a determination of whether the Commissioner's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citations and quotations omitted). Nonetheless, while this court can neither reweigh the evidence nor substitute its own judgment for that of the Commissioner, the court's review is not superficial. "To find that the [Commissioner's] decision is supported by substantial evidence, there must be sufficient relevant evidence in the record that a reasonable person might deem adequate to support the ultimate conclusion." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* at 299.

**Determination of Disability**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.§§423(d)(1)(A). The Commissioner applies a five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §404.1520(b)-(f); *see also Williams v. Bowen*, 844 F.2d 748, 750-752 (10th Cir. 1988) (describing five steps in detail). Under this sequential procedure, Plaintiff bears the initial burden of proving that she has one or more severe impairments. 20 C.F.R. § 404.1512; *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). Then, if Plaintiff makes a prima facie showing that she can no longer engage in prior work activity, the burden of proof shifts to the Commissioner to show that Plaintiff retains the capacity to perform a different type of work and that such a specific type of job exists in the national economy. *Turner*, 754 F.2d at 328; *Channel v. Heckler,* 747 F.2d 577, 579 (10th Cir. 1984).

**Plaintiff's Claims of Error**

Plaintiff asserts the following claims of error:[1] "1. [t]he ALJ ignored the Treating Physician Rule regarding [Plaintiff's] mental limitations[;] 2. [t]he ALJ failed to conduct a proper analysis of [Plaintiff's] pain[;] 3. [t]he ALJ failed to conduct a proper analysis of [Plaintiff's] credibility before he found her not credible[;] 4. [t]he ALJ committed reversible

---

[1]Unless otherwise indicated, quotations in this report are reproduced verbatim.

error when he failed to assess [Plaintiff's] mental limitations[;] 5. [t]he ALJ improperly failed to find that [Plaintiff's] mental limitations reduced her RFC[; and,] 6. [t]he ALJ failed to properly utilize the vocational expert." [Doc. No. 15, p. 6].

**Analysis**

The ALJ determined that Plaintiff – who was almost fifty-five years old on the date of the decision with a high school education and with past relevant work as a head housekeeper and a hospital housekeeper [Tr. 21 - 22] – was severely impaired by depression and/or anxiety, arthritis, and degenerative disc disease [Tr. 17]. He further concluded that Plaintiff's hypothyroidism, carpal tunnel syndrome, and diverticulitis were nonsevere impairments *Id.* None of Plaintiff's impairments were found to meet or equal a listed impairment [Tr. 18]. Following his consideration of the objective medical evidence, the opinion evidence of record, and Plaintiff's subjective claims, the ALJ determined that Plaintiff had the residual functional capacity ("RFC")[2] to perform light work with frequent balancing and kneeling and with occasional stooping, crouching, crawling, climbing of stairs and ladders, and reaching overhead bilaterally [Tr. 19]. Plaintiff was found able to perform only simple and some complex tasks, able to relate to others only on a superficial work basis, and able to adapt to a work situation. *Id.*

---

[2]Residual functional capacity ("RFC") "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

**The ALJ's Credibility Assessment**[3]

Plaintiff maintains that "[t]he ALJ utterly failed to apply any legal analysis for [Plaintiff's] pain symptoms as outlined in *Luna v. Bowen,* 834 F.2d 161 (10th Cir. 1987), the seminal Tenth Circuit case on pain analysis." [Doc. No. 15, p. 17]. Plaintiff is mistaken. After summarizing Plaintiff's subjective complaints or symptoms [Tr. 19 and 20], the ALJ found that Plaintiff's medically determinable impairments – previously determined at step two to be depression and/or anxiety, arthritis, degenerative disc disease, hypothyroidism, carpal tunnel syndrome, and diverticulitis [Tr. 17] – "could reasonably be expected to cause the alleged symptoms[.]" [Tr. 19]. Thus, the ALJ "consider[ed] (1) whether Claimant established a pain-producing impairment by objective medical evidence [and] (2) if so, whether there is a 'loose nexus'" between the proven impairment and the Claimant's subjective allegations of pain[.]" *Musgrave v. Sullivan,* 966 F.2d 1371, 1376 (10th Cir. 1992) (citing *Luna,* 834 F.2d at 163-64).

Finally, the ALJ, as required, considered Plaintiff's allegations of disabling symptoms[4] in order to "decide whether he believe[d] them." *Thompson v. Sullivan,* 987 F.2d

---

[3]Plaintiff's second and third claims of error are considered together and are addressed first in this Report.

[4]The ALJ repeated Plaintiff's claims that her job was too stressful; that she could not sit in front of a computer all day; that she was unable to type due to carpal tunnel syndrome; that she was in pain all of the time; that her ability to sit, stand, and lift was limited; that she had anxiety attacks three to four times a week; that she wanted to be alone, even to the exclusion of her husband; and, that she did not want to answer the door or the phone [Tr. 19 - 20].

1482, 1489 (10th Cir. 1993) (quotation omitted).[5] The ALJ found that Plaintiff's claims of disabling pain and other symptoms lacked credibility, and his rationale for that determination is clearly set out in his decision [Tr. 20]. An ALJ's "[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (quotation omitted). A simple reading of the decision [Tr. 20] reveals that the ALJ – focusing on the consistency of nonmedical testimony with objective medical evidence – cited to specific evidence in support of his conclusion and, thus, explained the required link between the evidence of record and his finding that Plaintiff's allegations were not entirely credible. As long as the ALJ provides the specific evidence he has relied on in assessing a claimant's credibility, "a formalistic factor-by-factor recitation of the evidence" is not required in the Tenth Circuit. *Qualls v. Apfel,* 206 F.3d 1368, 1372 (10th Cir. 2000).

Plaintiff – whose claim is that the ALJ failed to link *any* evidence to his findings – does not challenge the legitimacy or substantiality of the specific evidence cited by the ALJ; neither will this court address an issue which has not been advanced and developed on

---

[5]In making this determination, an ALJ should consider factors such as

> the levels of medication and their effectiveness, the extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of medical contacts, the nature of daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, the motivation of and relationship between the claimant and other witnesses, and the consistency or compatibility of nonmedical testimony with objective medical evidence.

*Hargis v. Sullivan,* 945 F.2d 1482, 1489 (10th Cir. 1991) (quotation omitted).

appeal.[6] As to the sole claim of legal error which has been asserted, Plaintiff has failed to establish that the ALJ committed any legal error in connection with his assessment of Plaintiff's credibility.

**Alleged Violation of the Treating Physician Rule as to Plaintiff's Mental Limitations**

**A. Claim that the ALJ Ignored Plaintiff's Primary Medical Doctors**

Here, Plaintiff's overarching claim is that "the ALJ ignored or rejected the statements and opinions of [Plaintiff's] treating physicians and counselors, regarding the severity of [Plaintiff's] mental impairments." [Doc. No. 15, p. 7]. Specifically, she first maintains that the ALJ erred in connection with the findings of Plaintiff's primary care physician, John R. Christiansen, M.D. *Id.* at 8. Plaintiff references Dr. Christiansen's August of 2007 notation of Plaintiff's report that she was having difficulty with anxiety and depression as a result of neck pain and problems with recent memory and that she apparently had to stop working. *Id.* and Tr. 438. Dr. Christiansen's impression was anxiety, depression, cervical neuralgia, and a problem with recent memory; he prescribed Ativan[7] for anxiety and depression [Tr. 438]. Plaintiff further notes that she continued to see Dr. Christiansen for treatment of her

---

[6]Plaintiff persists in this claim in her reply brief, arguing that "the point of [Plaintiff's] contention in Proposition II and III in that the ALJ failed to apply the correct legal standard. In fact, no legal standard was applied by the ALJ to evaluate [Plaintiff's] pain symptoms, or her credibility." [Doc. No. 17, p. 9].

[7]"Ativan is an antianxiety medication, belonging to a drug class known as benzodiazepines. Ativan is used for the short-term relief of the symptoms of anxiety that results from depression." *See* http://www.pdrhealth.com/drugs/ativan

7

anxiety and depression [Doc. No. 15, p. 8; Tr. 437].

Plaintiff's point with regard to Dr. Christiansen's impressions and treatment is unclear. The ALJ accepted the long-time treating physician's diagnoses by finding that Plaintiff's depression and/or anxiety were severe impairments – whether they were organic or resulted from physical impairments – which "have more than a minimal effect on the claimant's ability to perform work related activities[.]" [Tr. 17]. He restricted her RFC to the performance of only simple and some complex tasks and found that she could relate to others on only a superficial work basis [Tr. 19]. Plaintiff fails to direct the court to any restrictions the treating physician imposed as a result of these impairments which were improperly marginalized or rejected by the ALJ.[8] Accordingly, Plaintiff has failed to establish that the ALJ committed error in connection with his handling of Dr. Christiansen's medical findings.

As to Plaintiff's argument regarding the ALJ's alleged failure to properly evaluate the findings of "[o]ther physicians [who] also mentioned or commented on [Plaintiff's] depression and anxiety[,]" [Doc. No. 15, p. 8], the Commissioner correctly responds that "with just one exception, these doctors merely recorded Plaintiff's inclusion of depression and/or anxiety in the medical history she reported (Tr. 290-291, 457, 461, 480). Such evidence in no way represents an opinion from these doctors endorsing Plaintiff's claims

---

[8]In her reply brief, Plaintiff maintains that "[t]he ALJ accepted the 'diagnosis' of anxiety and depression from Dr. Christiansen, but he rejected his opinion." [Doc. No. 17, p. 4]. Nonetheless, Plaintiff again fails to express what "opinion" she is referencing.

regarding depression and anxiety." [Doc. No. 16, p. 5]. The one exception is the notation made by Joseph Braden, D.O., an emergency room doctor who noted that Plaintiff was "anxious" after suffering from a transient ischemic attack ("TIA")[9] and driving her car into the side of a bridge [Doc. No. 16, p. 5 - 6; Tr. 419 and 425]. Plaintiff, however, fails to suggest how the ALJ – who found that Plaintiff was severely impaired by depression and/or anxiety – erred as to Dr. Braden's finding that Plaintiff was "anxious" following this episode.

Plaintiff has failed to establish error with regard to her claim on appeal that the ALJ "refus[ed] to accept [Plaintiff's] treating medical doctors." [Doc. No. 15, p. 8].

### B. Claim that the ALJ Ignored Plaintiff's Psychological Counselor

The ALJ did not, as Plaintiff alleges, "ignore" Plaintiff's psychologist; rather, he declined to accept his opinions for the reasons explained in the decision:

> At the hearing, the claimant testified that she had PTSD, which caused her to want to be alone, without even her husband around, and not wanting to answer the door or phone, and prevents her from getting out much because she was just inside. The severity of the claimant's allegations seemed to increase after a visit to Dr. Gary Rouse, Ph.D. Dr. Rouse supplied a medical source statement in which he opines the claimant has PTSD and major depression. He also finds the claimant has marked problems with social functioning, marked problems with persistence and pace and marked problems with hygiene. He notes the claimant has auditory hallucinations and marked problems with memory. He states the claimant is at high risk for suicide due to mental illness, guilt, helplessness and hopelessness and because her father committed suicide. He further opines the claimant is paranoid and cannot learn the material under stress. However, even with all of the above he feels

---

[9]A transient ischemic attack or TIA is "a sudden focal loss of neurologic function with a complete recovery usually within 24 hours; caused by a brief period of inadequate perfusion in a portion of the territory of the carotid or vertebral basilar arteries." *Stedman's* Medical Dictionary 181 (28th ed. 2006).

she can handle her own finances (Exhibit 21F). This opinion, however, is not being relied on for several reasons. Dr. Rouse refers to the claimant as a patient of his; however, there are no treatment records in the medical evidence validating the opinion in the diagnosis, only the one opinion which is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion. The doctor's opinion is without substantial support from the other evidence of record, which obviously renders it less persuasive. Dr. Rouse apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. The possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he sympathizes for one reason or another. Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patient's requests and avoid unnecessary doctor/patient tension. While it is difficult to confirm the presence of such motives, they are more likely in situations where the opinion in question departs substantially from the rest of the evidence of record, as in the current case. Finally, Dr. Rouse's opinion contrasts sharply with the other evidence of record, which renders it less persuasive.

[Tr. 20 -21].

Assuming *arguendo* that Dr. Rouse is considered to be a treating physician,[10] under the law of the Tenth Circuit, "[a]ccording to what has come to be known as the treating physician rule, the Commissioner will generally give more weight to medical opinions from treating sources than those from non-treating sources." *Langley v. Barnhart,* 373 F.3d 1116,

---

[10]The only medical record from Dr. Rouse is his September 30, 2008, "To Whom it May Concern Letter" which was discussed by the ALJ [Tr. 453 - 455]. That letter contains no information about Plaintiff's treatment history with Dr. Rouse. Accordingly, it is not possible to know whether Dr. Rouse was in a position to provide a "longitudinal picture" of Plaintiff's impairment. *See* 20 C.F.R. § 404.1527(d)(2). In this connection, the undersigned notes that Plaintiff did not list Dr. Rouse as a doctor or therapist whom she had seen as of her June 6, 2008 [Tr. 188], disability report [Tr. 183 - 189].

1119 (10th Cir. 2004). A sequential analysis must be undertaken by an ALJ when considering a treating source medical opinion which relates to the nature and severity of a claimant's impairments. *Watkins v. Barnhart,* 350 F.3d 1297, 1300 (10th Cir. 2003). The first step, pursuant to Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *2, is to determine whether the opinion is well-supported by medically acceptable techniques. *Watkins,* 350 F.3d at 1300. At the second step, adjudicators are instructed that "[e]ven if well-supported by medically acceptable clinical and laboratory diagnostic techniques, the treating source's medical opinion also must be 'not inconsistent' with the other 'substantial evidence' in the individual's case record." SSR 96-2p, 1996 WL 374188, at *2. If both of these factors are satisfied with regard to a medical opinion from a treating source, "the adjudicator must adopt a treating source's medical opinion irrespective of any finding he or she would have made in the absence of the medical opinion." *Id.* If, on the other hand, "the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Watkins,* 350 F.3d at 1300.

Once the ALJ determines that a treating source opinion is not entitled to controlling weight, he must consider the weight he does give to such opinion "using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.'" *Id.* "Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not

11

the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion." *Id.* at 1300-1301.[11] If he rejects the opinion completely, the ALJ must offer specific and legitimate reasons for so doing. *Id.*; *Miller v. Chater,* 99 F.3d 972, 976 (10th Cir. 1996).

Here, the ALJ found that Dr. Rouse's opinions to be "sharply" at odds with other substantial evidence of record – precluding controlling weight – and he likewise proffered reasons that the opinions are "not being relied on[,]" or, in other words, reasons for substantially rejecting the opinions [Tr. 21].[12] Therefore, the question becomes whether those reasons were specific and legitimate. First, the ALJ noted the internal inconsistency between Dr. Rouse's description of Plaintiff's status and her resulting incapacitation – marked problems with social functioning, persistence, pace, and hygiene; auditory hallucinations; marked memory difficulties; high suicide risk; suffers from guilt, helplessness, and hopelessness because her father committed suicide; suffers from paranoia; and, cannot learn new material under stress – and his finding that she can handle her own finances.[13] *Id.* This reason is clearly specific and it is also a legitimate conclusion on the

---

[11]The ALJ is not required to expressly discuss or apply each factor. *Oldham v. Astrue,* 509 F.3d 1254, 1258 (10th Cir. 2007).

[12]In summarizing his findings on the opinion evidence of record, the ALJ stated that he was giving "little weight" to Dr. Rouse's opinions [Tr. 21]. This is consistent with his determination that Plaintiff suffered from anxiety and depression which restricted her work abilities [Tr. 17 and 19].

[13]Dr. Rouse's To Whom it May Concern Letter states that Plaintiff was applying for Social Security benefits [Tr. 453].

12

ALJ's part. Dr. Rouse's description of an unhygienic, preoccupied, suicidal, helpless, possibly hallucinating individual who has "problems with time, " "poor abstract skills," and who has marked problems with concentration and memory [Tr. 454], does not readily mesh with the concept of an individual who can handle their own finances .

Neither are, as the ALJ found, Dr. Rouse's opinions consistent with the other evidence of record. For example,[14] that evidence reveals that Dr. Christiansen provided continuous care to Plaintiff beginning in July 1, 2003 [Tr. 277]. He was the first physician of record to observe her depression and anxiety when in August, 2007 he recorded her complaints of "difficulty with anxiety and depression due to the discomfort of the neck and difficulty with recent memory[,]" diagnosed her with the same, and prescribed medication [Tr. 270 and 438]. Dr. Christiansen stated in September 2007 that Plaintiff's anti-depressant "seems to he helping[]" [Tr. 437]; by October 2007, Plaintiff was noted to be doing well and her "depression seem[ed] improved." *Id.* In early November, 2008 – a little over a month after Dr. Rouse recorded his opinions – Dr. Christiansen stated, in part, that "[s]he is doing great. She feels good. No complaints. She does have trouble relaxing at nighttime but otherwise she is fine." [Tr. 468 and 490]. Finally, on February 24, 2009, Dr. Christiansen saw Plaintiff

---

[14]Plaintiff's claims of error in connection with the ALJ's evaluation of the opinions of the consultative mental examiner, Dr. Chakraburtty, are discussed the next section. For purposes of the claim of error now at issue, however, in contrast to the findings of Dr. Rouse, Dr. Chakraburtty found on mental status exam that Plaintiff had average grooming, good eye contact, focused and goal-directed thought process, thought content that was devoid of perceptual abnormalities, blunt affect, intact insight, and, judgment with avoidant qualities [Tr. 350]. Plaintiff's cognitive testing revealed that she was alert and oriented x 3 with intact concentration, registration, short-term memory, and abstract interpretation. *Id.*

and found that she was doing quite well, that her back was a chronic problem, and that her arthritis appeared stable [Tr. 488].

During the relevant period, Dr. Christiansen referred Plaintiff to a neurologist, Farhat Husain, M.D., [Tr. 290 - 293], to whom Plaintiff complained, in part, of memory difficulties. With respect to Plaintiff's memory difficulties, Dr. Husain noted parenthetically "(O.K. on exam)." [Tr. 297, 327, 336, and 389]. After a series of testing, Dr. Husain discharged Plaintiff in January, 2008 to the care of her primary care physician, noting her improved memory [Tr. 335].

Plaintiff also saw Bruce Parker, M.D., a gynecologist, during the relevant time period. At her annual examination in May of 2007 – shortly after her alleged onset of disability – Plaintiff was shown as "doing well" and reporting "that she had a light stroke last November with no residual." [Tr. 303]. In May, 2009, at her last medical examination of record in this case, Plaintiff reported that she had been off hormone replacement therapy but wanted to start again because she was "having some problems with hot flashes and mood swings and irritability." [Tr. 480]. Dr. Parker noted that "[w]e discussed the pros and cons of hormonal therapy. She has had some questionable strokes in the past." *Id.* Substantial evidence supports the ALJ's determination that Dr. Rouse's opinions are inconsistent with the other medical evidence of record.

Contrary to Plaintiff's next argument, the ALJ did not err in noting that Dr. Rouse apparently relied on Plaintiff's subjective statements in forming his opinions and, likewise, did not err in concluding that "[y]et, as explained elsewhere in this decision, there exist good

14

reasons for questioning the reliability of the claimant's subjective complaints." [Tr. 21]. The ALJ found that Plaintiff's claims of disabling symptoms were not credible [Tr. 20], an assessment that has been unsuccessfully attacked by Plaintiff on purely legal grounds. As to the ALJ's findings that Dr. Rouse's opinions were colored by sympathy for or pressure from Plaintiff, however, the undersigned finds that such findings constitute improper speculation by the ALJ. Nonetheless, such speculation does not significantly undercut the legal and evidentiary basis for Plaintiff's rejection of Dr. Rouse's conclusions that Plaintiff suffered from disabling limitations.

**C. Claim that "The ALJ Parsed His Own Psychological Consultative Examinations"**[15]

With regard to Plaintiff's consultative mental examination by Amal Chakraburtty, M.D., the ALJ found as follows:

> The claimant underwent a consultative examination, which revealed the claimant had intact concentration, registration, short-term memory and abstract interpretation. The examiner, Dr. Amal Chakraburtty did diagnose the claimant with Agoraphobia with panic (Exhibit 8F). This diagnosis, however, is not consistent with the medical evidence of record. Dr. Chakraburtty apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported. Yet, as explained elsewhere in this decision, there exist good reasons for questioning the reliability of the claimant's subjective complaints. The objective findings of the exam however, are consistent with the medical evidence of record.

[Tr. 20]. As the ALJ stated, Dr. Chakraburtty's report is controverted by the same medical

---

[15][Doc. No. 15, p. 13]

evidence of record that was addressed in connection with Dr. Rouse's opinion. The physicians who saw Plaintiff on a regular basis throughout the relevant period noted her difficulties but, far from indicating that Plaintiff was suffering from panic and extreme social isolation, found that she was improving and doing well. In addition, a reading of Dr. Chakraburtty's report [Tr. 350] supports the ALJ's finding that Dr. Chakraburtty's diagnosis of agoraphobia with panic was grounded on Plaintiff's subjective statements as compared to those findings in the doctor's mental status exam which were objective in nature:

> Mood was *reportedly* stressed because of job demand in the past and unemployed in the present. *She also reports* that she has overwhelming fear and panic about the "crazy outside world". Whenever she goes out to a new place or meets a new person she has overwhelming anxiety, tightness in the chest, dry mouth, feeling dizzy, blurred vision, and develops a headache.

*Id.* (emphasis added). As the ALJ stated and as been previously addressed, he found Plaintiff's statements regarding her symptoms to be less than fully credible, a determination which has been upheld on judicial review.

The State agency consultant who reviewed Dr. Chakraburtty's report – and to whose findings the ALJ accorded "significant weight" [Tr. 21] – found that Plaintiff suffered from "[a]nxiety . . . as evidenced by . . . . a persistent irrational fear of a specific object, activity or situation which results in a compelling desire to avoid the dreaded object, activity, or situation." [Tr. 368, bolding omitted]. Based on the totality of the medical evidence and Dr. Chakraburtty's findings [Tr. 375], he completed a mental RFC evaluation consistent with that assessed by the ALJ [Tr. 379]. The ALJ's analysis of the evidence submitted by Dr. Chakraburtty and by the State agency expert is free from legal error and finds substantial

16

evidentiary support.

### Assessment of Plaintiff's Mental Limitations[16]

In these claims of error, Plaintiff argues that "[t]he ALJ . . . erred when he did not assess [Plaintiff's] limitations at steps four and five due to her depression." [Doc. No. 15, p. 19]. Likewise, Plaintiff alleges that the ALJ "never included her mental limitations in determining her RFC." *Id.* at 23. Contrary to Plaintiff's assertion, the ALJ found that Plaintiff's anxiety and depression limited her to performing only simple and some complex tasks and to work in which she would only need to relate to others on a superficial work basis [Tr. 19]. As to Plaintiff's claim that "the ALJ failed to determine and then make findings regarding the mental demands of her [past relevant work,]" [Doc. No. 15, p. 20], the ALJ's step four determination that Plaintiff could not return to her past relevant work obviated the necessity of such findings.

### Vocational Testimony

As her final claim of error, Plaintiff contends that "the ALJ never asked a proper all-encompassing question of the [vocational expert]." *Id.* at 23. Specifically, she argues:

> Where is the "all encompassing hypothetical that relates with precision to [Plaintiff's] impairments? What about her migraines? What about her urinary urgency and wetting herself? What about her memory/forgetfulness? What about her hand problems? What about her dizziness? What about her "fairly severe pain?" All of the above limitations are found at AR 445 - 452.

*Id.* at 25. Nonetheless, as the Commissioner responds, "[w]hat Plaintiff cites are merely

---

[16]Plaintiff's fourth and fifth claims of error are considered together.

17

Plaintiff's own description of her symptoms that her treating physicians documented in their records and the state agency physician included in his discussion of the record medical evidence (Tr. 446-447)." [Doc. No. 16, p. 20].

There is no question that hypotheticals posed to a vocational expert must reflect a claimant's impairments with precision, *see Hargis v. Sullivan,* 945 F.2d 1482, 1492 (10th Cir. 1991), "but they need only reflect impairments and limitations that are borne out by the evidentiary record." *Decker v. Chater,* 86 F.3d 953, 955 (10th Cir. 1996). Plaintiff does not maintain that hypothetical question [Tr. 38] posed to the vocational expert by the ALJ fails to accurately reflect the limitations set out in the ALJ's RFC assessment. Plaintiff has not established – or has not challenged – through her claims of error that the RFC assessed by the ALJ is deficient either as a matter of law or evidence. Thus, Plaintiff's claim of error is unavailing.

## RECOMMENDATION AND NOTICE OF RIGHT TO OBJECT

For the foregoing reasons, the undersigned recommends that the Commissioner's decision be affirmed. The parties are advised of their right to object to this Report and Recommendation by July 19, 2011, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The parties are further advised that failure to make timely objection to this Report and Recommendation waives their right to appellate review of both factual and legal issues contained herein. *Moore v. United States*, 950 F.2d 656 (10th Cir. 1991).

This Report and Recommendation disposes of all issues referred to the Magistrate Judge in this matter.

ENTERED this 29th day of June, 2011.

BANA ROBERTS
UNITED STATES MAGISTRATE JUDGE